Filed 11/24/25  P. v. Isaac CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B340750 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA099542) |
| v. | |
| ZOELEE ISAAC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

This is defendant and appellant Zoelee Isaac's third appeal from a postjudgment order denying his petition for resentencing under Penal Code[1] section 1172.6. We have twice before affirmed the trial court's orders denying defendant's resentencing petitions. Finding defendant has not demonstrated grounds warranting a new evidentiary hearing, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**Underlying facts[2]**

In 1994, defendant participated with several codefendants in a series of violent armed bank robberies. During the first robbery at Home Bank, codefendant Sonja Key shot and killed security guard Juan Corona. Defendant was convicted of first degree murder with a robbery-murder special circumstance and sentenced to life without parole.

**The first resentencing petition and subsequent appeal**

On January 2, 2019, defendant filed a petition for resentencing. (*Isaac I, supra*, B305378.) The trial court appointed counsel. (*Ibid*.) After briefing by both parties, the trial court issued an order to show cause and set the matter for an evidentiary hearing pursuant to section 1172.6, subdivision (d). (*Isaac I, supra*, B305378.) "The parties submitted on their briefs

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The factual background of this case has been detailed in our two prior nonpublished opinions in *People v. Isaac* (Aug. 12, 2021, B305378) (*Isaac I*) and *People v. Isaac* (Jan. 30, 2024, B326883) (*Isaac II*). Therefore, we summarize the underlying facts.

2

and whatever materials had been submitted by the parties to the trial court." (*Ibid*.)

In February 2020, "[a]fter entertaining oral argument, the trial court denied defendant's section [1172.6] petition." (*Isaac I, supra*, B305378.) The trial court recited a list of evidence supporting its conclusion that "defendant was 'a major participant' who acted with 'reckless indifference of life'" and "a direct aider and abettor who acted with intent to kill." (*Ibid*.) It noted that "'this was an armed takedown robbery of a bank' [with] [']no effort to minimize violence. They robbed it in the middle of the day. They had to know there was an armed security guard.' And, defendant had to have been aware 'of the dangers of robbing a bank during working hours with an armed guard.' [¶] Furthermore, defendant 'was there, and he was present, and he was not outside as the getaway driver. . . . He was there in the bank. He was part of this well-orchestrated and planned robbery.' [¶] The trial court also pointed to the evidence that the robbery was well planned: the robbers stole a car in the morning and then, after they left the bank, 'within a short distance they switch[ed] cars.' 'Not only do they do all those things, but they wear disguises. . . . [T]hey have buckets of water in the van. That's to deal with the dye that might be on the packets of money that they steal. They have wigs on. There are just all kinds of things that show that this [was] highly sophisticated.'" (*Ibid*.)

On appeal, we affirmed, holding "the trial court's findings that defendant acted either as a direct aider and abettor with intent or a major participant with reckless indifference to human life are supported by substantial evidence." (*Isaac I, supra*, B305378.) Specifically, we agreed defendant was an aider and abettor based upon "[r]easonable inferences . . . that Key

3

intended to not just shoot, but kill Corona, and that defendant knew that she intended to do so.  Therefore, the trial court's finding that defendant was ineligible for resentencing because he had the intent to kill was proper." (*Ibid.*)

**The second resentencing petition and subsequent appeal**

In July 2022, defendant filed a second resentencing petition under section 1172.6.  (*Isaac II, supra*, B326883).)  The trial court again appointed counsel.

The People opposed, arguing the second petition should be denied because it "'[wa]s duplicative'" of a petition that the trial court "'already denied . . . in 2020 and the Court of Appeal affirmed.'" (*Isaac II, supra*, B326883.)

Defendant filed a response, contending that the enactment of Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) was a "'significant change in the law'" entitling him to a new evidentiary hearing under section 1172.6.  Defendant argued because the record is "'extremely unclear'" on the question of "'what SPECIFIC evidence the [c]ourt relied upon and what standard the court used in denying defendant's [first] petition,'" "'[t]here is no way to ascertain if the court relied upon evidence that would no longer be permissible under the changes in 1172.6 . . . procedures as they have been amended through Senate Bill 775.'" (*Isaac II, supra*, B326883.)

In December 2022, the matter proceeded to a hearing. After hearing argument from both sides, the trial court said that it had "'painstakingly [gone] through the facts of this case'" when evaluating defendant's first resentencing petition and "'made a ruling in which I indicated that . . . defendant . . . was a major participant who acted with reckless indifference to life. . . .  [¶] . . . [A]nd I further stated that there may have been some evidence to support that he aided and abetted the crime with

4

specific intent to kill.  [¶]  [I]n any case, I just don't see a reason to give him a second chance.  He had his opportunity.  He appealed my decision.  He lost that appeal.'"  As a result, the trial court summarily denied defendant's second resentencing petition "'based on . . . "law of the case."'"  (*Isaac II, supra*, B326883.)

On appeal, we affirmed, holding the "trial court properly applied the law of the case doctrine to summarily deny defendant's resentencing petition."  (*Isaac II, supra*, B326883.)  We rejected defendant's arguments that three purported changes in law—Senate Bill 775's evidentiary provisions, cases addressing preclusive effects of prior jury findings, and cases requiring consideration of youth in reckless indifference determinations— warranted a new evidentiary hearing because none of the changes affected defendant's liability as a direct aider and abettor with intent to kill.

## The third[3] (current) resentencing petition

On August 16, 2024, defendant, through counsel, filed a motion for appointment of counsel pursuant to section 1172.6, and on August 27, 2024, defendant filed a new petition for resentencing pursuant to section 1172.6.[4]

---

[3]      This is technically defendant's fifth petition, however, the third, filed March 8, 2023, "could not be processed because of lack of sufficient information," and the fourth, filed May 26, 2023, was denied after the appointment of counsel, because defendant's appeal in petition No. 2 was still pending.  For clarity, we refer to the instant petition as the third petition.

[4]      According to a declaration of counsel, the petition, dated July 7, 2024, was sent to their office by defendant.  As a result, it seems, counsel filed the motion for appointment of counsel, along with defendant's petition.

Counsel acknowledged defendant had "previously filed two [section] 1172.6 [p]etitions," but averred, "in light of recent changes to the law [defendant] is entitled to file a new petition and consideration as to whether he was a major participant acting with reckless indifference to human life." Specifically, counsel cited *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*), which deals with implied malice murder based on aiding and abetting theory, and *People v. Jimenez* (2024) 103 Cal.App.5th 994 (*Jimenez*), which deals with the consideration of youthfulness in petitions stemming from convictions involving implied malice murder.

On August 27, 2024, in a written order, the trial court denied defendant's request for appointment of counsel and summarily denied his petition. The court reasoned *Jimenez* and *Reyes* did not apply to defendant because they "addressed the issue of culpability of a youthful offender as a direct aider and abettor under an implied malice theory." The court reiterated its prior ruling where defendant was found "guilty of murder beyond a reasonable doubt based on both a felony murder theory wherein [defendant] was a major participant who acted with reckless disregard to human life and as a direct aider and abettor with the specific intent to kill." Furthermore, the trial court noted *Reyes* had already been decided when this court affirmed denial of his second petition in *Isaac II* and this court also discussed the need (or not) "to consider [a] defendant's youth when assessing his capacity to be recklessly indifferent within the meaning of section 1172.6. . . . But [*Isaac I*] affirmed that defendant is ineligible for resentencing relief as a direct aider and abettor, and we have rejected all of defendant's arguments targeting that finding."

Defendant timely appealed.

6

**DISCUSSION**

## I. Applicable Law

### A. *Section 1172.6*

"Section 1172.6 provides a mechanism whereby people 'who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019 . . . may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court.'" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 382 (*Arnold*).)

As is relevant here, in order to obtain resentencing relief, the petitioner must allege (1) an information was filed against him allowing the prosecution to proceed under a theory of felony murder, the natural and probable consequences doctrine, or any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)(1)); (2) the petitioner was convicted of murder (§ 1172.6, subd. (a)(2)); and (3) he could not now be convicted of murder as presently defined (§ 1172.6, subd. (a)(3)). Upon receiving a facially sufficient petition, which contains all the required information, or such required information is readily ascertainable, the "court shall appoint counsel." (§ 1172.6, subd. (b)(3).)

If the trial court determines the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c).) At the evidentiary hearing, the prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) If the prosecution cannot meet its burden, the petitioner is entitled to vacatur of the murder conviction and resentencing as set forth in section 1172.6, subdivision (e).

7

Effective January 1, 2022, section 1172.6 was amended by Senate Bill 775. Among other things, these amendments provide that, at the evidentiary hearing stage, the trial court "may consider evidence previously admitted at any prior hearing" except for "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872," which "shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

The statute as amended also specifies that the trial court may "'consider the procedural history of the case recited in any prior appellate opinion.' The specificity of this provision 'indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing.'" (*Arnold, supra*, 93 Cal.App.5th at p. 392.)

### B. *Standard of review*

When a trial court denies a section 1172.6 petition at the prima facie stage based on a question of law, our review is de novo. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## II. Analysis

### A. *Additional relevant law*

The law of the case doctrine provides "'when, in deciding an appeal, an appellate court "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal[s]."'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 374, fn. 6.) However, the doctrine "will not be adhered to where its application will result in an unjust

decision, e.g., where . . . the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations . . . ." (*People v. Stanley* (1995) 10 Cal.4th 764, 787, citations omitted; see *People v. Lee* (2023) 95 Cal.App.5th 1164, 1186.)

"'In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 451.) The doctrine of collateral estoppel applies in criminal proceedings. (*People v. Strong* (2022) 13 Cal.5th 698, 716.) "'As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."'" (*People v. Curiel, supra*, at pp. 451–452.) "Even when the threshold requirements for issue preclusion are met, one well-settled equitable exception to the general rule holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue." (*People v. Strong, supra*, at p. 716.)

### B. *The third petition is barred by the law of the case doctrine and issue preclusion*

The People argue defendant's third petition is "identical in all relevant respects" to his first and second petitions and should

be barred by issue preclusion and the law of the case. Furthermore, the People argue this court's prior decisions in *Isaac I* and *Isaac II*, including our finding "the trial court properly applied the law of the case to summarily deny defendant's [second] resentencing petition," along with no *relevant* intervening changes in the law surrounding section 1172.6, further require affirmance of the trial court's ruling. We agree with the People's second point. (*People v. Barragan* (2004) 32 Cal.4th 236, 246 ["[B]ecause an appellate court's determination 'that the evidence is []sufficient to justify a finding or a judgment is necessarily a decision upon a question of law[,]' [s]uch a determination 'establishe[s] as the law of the case that all the evidence adduced at the previous [proceeding] was []sufficient as a matter of law to establish' the finding or judgment." (Citation omitted.)].)

Defendant contends, however, his third petition should not be procedurally barred as successive "based on changes in the law." (*People v. Farfan* (2021) 71 Cal.App.5th 942 (*Farfan*).) In *Farfan*, a panel of this court held, where an otherwise successive petition is "based on new authority which challenged the primary ground for the superior court's summary denial . . . , [it] was not procedurally barred as a successive petition." (*Id.* at p. 951.)

Defendant claims, since denial of his first petition, the law surrounding section 1172.6 has changed in three ways: (1) preclusive effects of prior jury findings, (2) consideration of youth in reckless indifference, and (3) clarification on the law on implied malice. Because we addressed the first two changes in our *Isaac II* opinion, we turn to the last change—that the Supreme Court "has clarified the law on implied malice" in *People v. Collins* (2025) 17 Cal.5th 293 (*Collins*) and *Reyes, supra*, 14

10

Cal.5th 981—first.[5]  Specifically, defendant argues *Collins*, which "elaborated on *Reyes*," makes clear the "life-endangering act" for implied malice murder must be the specific act proximately causing death (here, the shooting), not preliminary dangerous conduct (here, the robbery planning).  This change in the law is irrelevant to defendant's petition and, thus, does not overcome the law of the case or collateral estoppel principles.

First, our decision in *Isaac I* was not dependent on any single theory of liability but found substantial evidence supporting defendant's ineligibility under at least two distinct grounds: (1) direct aiding and abetting with intent to kill (express malice), and (2) major participant with reckless indifference to human life.  While *Isaac I* also referenced implied malice as an alternative theory, this discussion was not necessary to our holding.

Second, *Isaac II* specifically addressed this issue, holding "*Isaac* [*I*] affirmed that defendant is ineligible for resentencing relief as a direct aider and abettor, and we have rejected all of defendant's arguments targeting that finding.  Therefore, it is irrelevant whether defendant could now be found ineligible on the alternate ground that he was a major participant who acted with reckless indifference to human life." (*Isaac II, supra*, B326883.)  The same reasoning applies here: *Reyes* and *Collins's* changes to the viability of implied malice theories notwithstanding, defendant remains ineligible based on his liability as a direct aider and abettor with intent to kill.

Third, as discussed, the *Reyes/Collins* line of cases primarily clarifies the requirements for *implied* malice murder.

---

[5]      We address the first two changes briefly in part II.C., *post.*

Defendant's liability as established in *Isaac I*, however, was based on *express* malice—specifically, our finding that "reasonable inferences could be drawn that Key intended to not just shoot, but kill Corona, and that defendant knew that she intended to do so." (*Isaac I, supra*, B305378.) This express malice finding remains valid under current law and provides an independent basis for defendant's ineligibility for resentencing relief.

## C. *Defendant's "cumulative impact" theory lacks merit*

Defendant argues even previously considered issues or changes to the law surrounding section 1172.6 should be reconsidered as part of a "cumulative impact" analysis alongside the *Reyes/Collins* developments. This argument essentially asks us to relitigate issues we have already decided. We decline defendant's invitation.

In *Isaac II*, we considered whether changes in law regarding (1) evidentiary exclusions under Senate Bill 775, (2) preclusive effects of prior jury findings, and (3) consideration of youth in reckless indifference determinations warranted reconsideration. Finding defendant remained ineligible based on his liability as a direct aider and abettor with intent to kill, we concluded they did not.

The fact defendant now packages these previously rejected arguments with a new argument regarding implied malice does not transform them into viable grounds for relief. (*People v. Curiel, supra*, 15 Cal.5th at p. 453 ["'The rule that collateral estoppel applies only to those issues that were actually or fully litigated in the prior proceeding does not refer to the quality or quantity of argument or evidence addressed to an issue. . . . Issue preclusion because of a prior adjudication results from the

12

resolution of a question in issue, not from the litigation of specific arguments directed to the issue.'"].)  Here, defendant's liability for murder is based on express malice.  Thus, any changes regarding implied malice murder do not aid defendant.

D. *Defendant's preclusive effect argument fails on its own terms*

Defendant attempts to distinguish his current argument about the preclusive effect of prior jury findings from the argument he presented in *Isaac II*, citing our statement he "does not make such claims" in that appeal.  Defendant argues the court's language demonstrates the issue was not actually decided and therefore cannot be subject to issue preclusion.  We are not persuaded.

In *Isaac II*, we specifically addressed defendant's contention "the trial court's dismissal of the personal firearm use allegation with respect to the murder charge functions as an acquittal on the finding that defendant personally fired the murder weapon."  (*Isaac II, supra*, B326883.)  We concluded, "[e]ven if we agreed with that contention, a prior finding that defendant did not personally use a firearm does not preclude the trial court from finding that he is ineligible for resentencing relief as a direct aider and abettor."  (*Ibid*.)

More fundamentally, in *Isaac II* we expressly noted our ruling in *Isaac I*, stating "the record of conviction contains sufficient evidence to support a finding that defendant directly aided and abetted first-degree murder *regardless* of 'whether [he] himself was armed.'"  (*Isaac II, supra,* B326883.)  This finding necessarily encompasses and resolves any claim that the dismissal of personal firearm use allegations undermines defendant's liability as a direct aider and abettor and therefore is subject to issue preclusion.

13

## III. Any error in denying counsel was harmless

Defendant argues the trial court erred by denying his request for counsel and failing to conduct a prima facie hearing on his facially sufficient petition. Even assuming, arguendo, the trial court erred in denying counsel, any such error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

Under *Watson*, we assess whether it is reasonably probable defendant would have obtained a more favorable result absent the alleged error. (*People v. Lewis* (2021) 11 Cal.5th 952, 973–974.) Here, as demonstrated above, defendant is ineligible for resentencing relief as a matter of law based on his liability as a direct aider and abettor with intent to kill. This theory of liability (1) was established by substantial evidence in *Isaac I*, (2) remains valid under current law, and (3) provides an independent basis for denying relief regardless of any changes to other theories of liability.

While the trial court denied defendant's motion to appoint counsel, which was made through counsel, he was able to advance his arguments regarding why the new petition should not be procedurally barred as successive. Accordingly, as discussed, the court was able to consider—and did so in its written denial—whether defendant had overcome the arguments in favor of summary denial.

Had the trial court appointed counsel and conducted a full prima facie hearing, counsel could not have overcome the law of the case established in *Isaac I* and *Isaac II*. The express malice finding—defendant knew Key intended to kill Corona and shared that intent—is unaffected by *Reyes* and *Collins*, which address implied malice theories. Similarly, the personal firearm dismissal issue was already considered and found not relevant in *Isaac II*, which specifically noted defendant's liability as a direct

14

aider and abettor exists "*regardless* of 'whether [he] himself was armed.'" (*Isaac II, supra*, B326883.) Given defendant remains ineligible for relief as a matter of law, there is no reasonable probability the appointment of counsel or additional proceedings would have led to a different outcome. Any error was therefore harmless.

## DISPOSITION

The trial court's order is affirmed.



CHAVEZ, Acting P. J.


We concur:


RICHARDSON, J.


GOORVITCH, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.